IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 6, 2003 Session

## STATE OF TENNESSEE v. JERMAINE RESHAWN SCOTT, ANTHONY RAY THARPE, AND FELICIA ANN TAYLOR

**Direct Appeal from the Circuit Court for Henry County**
**Nos. 13269, 13270, 13278      Julian P. Guinn, Judge**

---

**No. W2002-01812-CCA-R3-CD  - Filed December 30, 2003**

---

Each of the defendants in this case was convicted of drug charges following the search of their home. They contend that the search warrant was invalid because of material misrepresentations and lack of probable cause. They also contend the trial court erred in sentencing each of them. After careful review of the record, we conclude the trial court did not err in failing to suppress the evidence obtained as a result of the search warrant, and we affirm each defendant's conviction. After *de novo* review of the trial court's sentencing determinations, we modify the sentences of defendants Scott and Tharpe. The sentence of Felicia Ann Taylor is affirmed. Accordingly, the case is remanded for entry of corrected judgments of conviction consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Modified in Part; and Reversed in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Victoria L. DiBonaventura, Paris, Tennessee, for the appellants, Jermaine Reshawn Scott, Anthony Ray Tharpe, and Felicia Ann Taylor.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; G. Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendants, Jermaine Reshawn Scott, Anthony Ray Tharpe, and Felicia Ann Taylor, were convicted of drug charges following the search of their home in Paris, Tennessee. Following a jury trial on March 12, 2002, Scott was convicted of possession of marijuana with intent to sell or deliver; Tharpe was convicted of simple possession of marijuana and simple possession of cocaine; and Taylor was convicted of simple possession of marijuana, simple possession of cocaine, and

possession of drug paraphernalia. Scott received a two-year sentence of split confinement with one year to be served in the county jail, followed one year in community corrections. Tharpe was sentenced to two consecutive sentences of eleven months, twenty nine days; with six months to serve, followed by supervised probation. Taylor was sentenced to three concurrent sentences of eleven months, twenty nine days; with six months to serve, followed by supervised probation. The trial court denied the defendants' motion for new trial in July of 2002. Scott's sentence was amended to reflect a two-year sentence, with 219 days to serve, followed by community corrections. The defendants contend that the trial court erred in refusing to suppress the evidence obtained pursuant to a search warrant and erred in sentencing each of them. The defendants timely appeal.

## Facts

On February 12, 2001, Officer Scott Wyrick of the Henry County Sheriff's Department, along with several other police officers, executed a search warrant at the home of Anthony Tharpe and Felicia Taylor. Anthony Tharpe, Felicia Taylor, Jermaine Scott, and Christopher Guy[1] were in the home at approximately 8:20 p.m., when the search was conducted. Police officers found cocaine, a crack pipe, and two "push rods" on the floor in the master bedroom, near where Taylor was located in the home. A bag of marijuana was found in the bathroom, and two rocks of cocaine were found on the top of a chair cushion in the living room where Tharpe had been sitting. Police officers found a bag of marijuana in Scott's pocket and a rock of cocaine in Guy's pocket. Cash in the amount of $2545.00 was recovered in the search.

## Analysis

### I. Motion to Suppress

The defendants contend the trial court erred in refusing to suppress the evidence against them, pursuant to a search warrant. Specifically, the defendants argue that the search warrant was invalid, because the affidavit contained a material misrepresentation and failed to establish probable cause.

The affidavit in support of the search warrant was sworn to by Officer Scott Wyrick and provides as follows:

> Within five days prior to the swearing of this affidavit, a confidential reliable informant did make a controlled purchase of cocaine base from 519 Pitt Street in Paris and Henry County, TN. The informant has given officers reliable information within the past six months on at least one occasion which has led to two arrests and seizure of illegal drugs. The informant and vehicle met at a secure location prior to the purchase where the informant and vehicle [sic] searched prior to the purchase. An electronic transmitter was placed on the person of the informant along with tape

---

[1] Christopher Guy is not included as a defendant in this appeal. Guy pled guilty to possession of cocaine with the intent to sell or deliver.

-2-

recorder. The informant was furnished with funds provided by the Henry County Sheriff's Office. The informant was kept under the constant surveillance by the affiant. The informant did meet with another person which drove the informant to 519 Pitt St. where crack cocaine was purchased. The affiant did monitor the transaction and did confirm that a transaction took place. A traffic stop was conducted just a few minutes after the purchase where the crack cocaine was recovered. The informant did tell the affiant that the informant gave the money to the individual to go inside 519 Pitt St. and purchase crack cocaine. Officers did interview the individual who made the purchase and did confirm that money was received from the informant to purchase crack cocaine. The informant was observed by the affiant, under constant surveillance, go with the individual directly to and from 519 Pitt Street in Henry County, TN. The individual making the purchase did tell officers that the crack cocaine was bought from a black male named "Hollywood"[2] who was staying at residence with owners of property Anthony Tharpe and Lisa Taylor.

An affidavit has historically been viewed as an indispensable prerequisite to the issuance of a search warrant in Tennessee. Tenn. Code Ann. § 40-6-103 (1997). Before a search warrant may be issued, the affidavit must set forth on its face facts which establish probable cause. Tenn. Code Ann. § 40-6-104 (1997); Tenn. R. Crim. P. 41(c). Probable cause to support the issuance of the warrant must appear in the affidavit, and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the magistrate issuing the warrant or possessed by the affiant. State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992).

When probable cause for a search is based upon information from a confidential informant, there must be a showing in the affidavit of both (1) the informant's basis of knowledge, and (2) his or her veracity. State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989). The basis of knowledge prong requires that the affidavit contain facts from which the magistrate may determine that the informant had a basis for the claim regarding criminal conduct or contraband. The veracity prong requires that the affidavit contain facts from which the magistrate may determine either the inherent credibility of the informant or the reliability of the information provided. Moon, 841 S.W.2d at 338. A conclusory allegation that the informant is reliable is insufficient; the affidavit must show underlying circumstances from which the magistrate is able to conclude that the informant is credible or his information is reliable. Id. at 339. Independent police corroboration of the information provided by the informant may make up deficiencies in either prong. Id. at 340; Jacumin, 778 S.W.2d at 436.

The defendants argue that the informant was the person who physically purchased the cocaine, instead of asserting that another person bought the cocaine. The defendants argue that the informant informed Officer Wyrick of a drug transaction of which the informant had no personal knowledge. Therefore, the defendants contend that the affidavit contains a material misrepresentation.

---

[2] The record reveals that "Hollywood" is an alias for Christopher Guy.

We conclude that the affidavit presented to the magistrate is adequately supported by probable cause as it demonstrates the basis of knowledge and veracity of the informant and clearly sets out the events that led to the illegal drug transaction. The affidavit clearly states that the "informant did tell the affiant that the informant gave the money to the individual to go inside . . . and purchase crack cocaine." The affidavit states that the officers interviewed the individual who made the purchase and confirmed that money was exchanged for the purchase of the cocaine. Furthermore, the language of the affidavit shows that the entire transaction was monitored by Officer Wyrick. The affidavit also established that, within the past six months, the informant had provided the police officers with reliable information which led to arrests and the seizure of illegal drugs. Based upon these facts, we conclude that the reliability of the informant's information was adequately established and the wording of the affidavit neither misled nor misrepresented any facts. We conclude that the trial court did not err in denying the defendants' motion to suppress the evidence.

## II. Sentencing

Because each of the defendants presents his or her own contentions regarding sentencing, we will address each defendant's sentencing issues separately.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

## A. Jermaine Reshawn Scott

The defendant, Jermaine Reshawn Scott, contends the trial court erred in sentencing him to 219 days of continuous confinement, followed by community corrections. He argues that because the trial court found him to be a suitable candidate for alternative sentencing, he should not have to serve such a strict sentence. He further argues that his current sentence is more burdensome than a sentence of straight confinement.

Scott was originally sentenced to a two-year, split confinement sentence, with one year of continuous confinement, followed by one year of community corrections for his Class E felony conviction of possession of marijuana with intent to sell or deliver. The trial court later modified his sentence to 219 days of continuous confinement, followed by community corrections.

### Analysis

A defendant receiving probation may ordinarily be required to serve up to one year of continuous confinement in the local jail, followed by probation. Tenn. Code Ann. § 40-35-306(a).

However, inmates with felony sentences of two years or less "shall have the remainder of their original sentence suspended upon reaching their release eligibility date" unless the district attorney general files a petition requesting denial and establishes at a hearing that the defendant committed disciplinary violations while in the institution. Tenn. Code Ann. § 40-35-501(a)(3), (6). This Court has previously ruled that the period of time ordered to be served in split confinement may not exceed the defendant's release eligibility date. State v. John W. Hill, No. 01C01-9802-CC-00072, 1999 Tenn. Crim. App. LEXIS 166 (Tenn. Crim. App. at Nashville, Feb. 25, 1999). The release eligibility date for a Range I, standard offender receiving a two-year sentence is 219 days, less certain sentence credits. Id. at *2.

In this case, the presentence report reflects that the defendant, Scott, has two prior convictions for possession of marijuana and one conviction for possession of a weapon with the intent to go armed. He committed one of the marijuana possession offenses while he was on bond. Scott received suspended sentences on each of his three prior convictions. Given his prior criminal history and his unwillingness to cease committing such offenses, we conclude that the trial court properly sentenced Scott to 219 days in confinement.

Scott argues that his sentence is improper because it is stricter than a sentence of straight confinement and contends that his sentence should be modified. However, he does not specifically argue how his sentence should be modified.

Our review of the record reveals the trial court intended to sentence the defendant, Scott, to community corrections, rather than the Tennessee Department of Correction, as a Range I, standard offender, for two years, to be served in split confinement, with 219 days of continuous confinement in the county jail and the balance of the sentence to be served in a community corrections program. Sentences involving split confinement are authorized by statute. See Tenn. Code Ann. §§ 40-35-104(c)(5) and -306. The judgment form herein has sentences for both the Department of Correction and community corrections checked. Upon remand, the trial court is instructed to file an amended judgment deleting any reference to the Department of Correction.

## B.  Anthony Ray Tharpe

The defendant, Anthony Ray Tharpe, contends that the trial court erroneously imposed consecutive sentences. He also contends that his release eligibility should be set at zero, because the trial court did not set a percentage.

Tharpe was sentenced to eleven months, twenty-nine days for each of his two Class A misdemeanor convictions. Supervised probation was ordered on the first conviction after serving six months confinement, and the second sentence was suspended in its entirety. The sentences were ordered to be served consecutively. We view the judgments to require six months of confinement, with eighteen months of supervised probation. The judgments fail to set out a percentage of minimum service prior to eligibility.

**Analysis**

The State concedes that the trial court erred in ordering the defendant, Tharpe, to serve consecutive sentences. Consecutive sentencing is governed by Tennessee Code Annotated section 40-35-115. The trial court has the discretion to order consecutive sentencing if it finds that one or more of the required statutory criteria exists. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). In imposing consecutive sentences, the trial court made no express finding as to which of the section 40-35-115 factors apply. Furthermore, the record does not reveal any factor that would support consecutive sentencing. We conclude that the trial court erred in ordering consecutive sentencing.

We are now left with a defendant who is serving concurrent sentences of eleven months, twenty-nine days, serving six months followed by supervised probation. The question remaining is what percentage of minimum service is required before this defendant reaches his date of program eligibility.[3] Tharpe is correct in stating that Tennessee Code Annotated section 40-35-302(d) provides that if the trial court does not set a percentage in the judgment, the percentage is considered as zero percent. We, therefore, set the percentage of minimum service required before he is eligible for work release, furlough, trustee status, or rehabilitative programs at zero percent.

## C. Felicia Ann Taylor

The defendant, Felicia Ann Taylor, contends that the trial court erroneously sentenced her without considering her health issues or her lack of a criminal record. She argues that the trial court erroneously and arbitrarily set her percentage of service at 75%. Taylor argues that she should be given probation after serving six months of her sentence in confinement. The State concedes that Taylor should be given probation after serving six months of her sentence in confinement because the record reflects the trial court intended her to serve only 50%, not 75%, of her sentence in confinement.

**Analysis**

We believe the State and the defendant, Taylor, are misconstruing the trial court's judgment. Taylor is sentenced to eleven months, twenty-nine days and is ordered to serve six months in the county jail. The percentage of minimum service required before she reaches her date of eligibility is 75%. The 75% minimum service required relates to her confinement, not her sentence. In other words, she must serve 75% of her six-month confinement in the county jail before becoming eligible to be on work release, furlough, trustee status, or participate in any rehabilitative programs.

Trial courts have more flexibility in misdemeanor sentencing than in felony sentencing. State

---

[3] We note some confusion over the release eligibility date and the percentage of minimum service required before each date of eligibility. The date of eligibility does not refer to and is not synonymous with release from incarceration.

v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998). Unlike felons, a defendant convicted of a misdemeanor enjoys no presumption of a minimum sentence. State v. Humphreys, 70 S.W.2d 752, 768 (Tenn. Crim. App. 2001). Although it would be a better practice for the trial court to make findings on the record when setting the percentage, there is no requirement that the trial court do so. Troutman, 979 S.W.2d at 274. After careful review, we conclude that the trial court did not err in sentencing Taylor.

## Conclusion

For the aforementioned reasons, we affirm the convictions of all three defendants. We remand the sentence of the defendant, Jermaine Reshawn Scott, for the trial court to enter an amended judgment. We reverse the consecutive sentences of the defendant, Anthony Ray Tharpe, and set his percentage of eligibility date at zero. We affirm the sentence of the defendant, Felicia Ann Taylor.

_____
JOHN EVERETT WILLIAMS, JUDGE